GRIFFIN *v.* WELCH.

Opinion delivered December 7, 1908.

MORTGAGES—DEED ABSOLUTE IN FORM—SUFFICIENCY OF EVIDENCE.—A deed absolute in form will be construed to be intended as a mortgage in effect if the proof of such intent is clear, unequivocal and convincing.

Appeal from Union Chancery Court; *Emon O. Mahoney,* Chancellor; affirmed.

*R. G. Harper,* for appellant.

1. In the absence of fraud or imposition, it requires clear and decisive testimony to prove that a deed absolute in form was intended as a mortgage, and a conveyance absolute in form is not converted into a mortgage by a contemporaneous agreement for a re-sale and purchase. 75 Ark. 551.

2. The tender was insufficient under the proof, for it is shown by uncontradicted testimony that the actual amount due was $872, instead of $725.

*W. D. Chew* and *J. H. Green,* for appellee.

1. The case of *Hays* v. *Emerson,* 75 Ark. 551, is not a similar case. There was fraud and imposition in this case, and the great preponderance of the testimony shows clearly the deed was intended as a mortgage. 68 Ark. 314; 73 *Id.* 489; 67 *Id.* 200.

2. Counting the $100 called *rent,* there was due $672; the tender was $725, leaving $53 for appellant's loss of time, which was ample.

McCULLOCH, J. Appellee, G. T. Welch, owned a tract of land in Union County subject to the purchase money lien of Anderson, his vendor, and conveyed it to appellant, G. B. Griffin, by deed absolute in form. He instituted this action to have the deed declared to be a mortgage and to be allowed to redeem from it. He alleges in his complaint that the deed, though absolute in form, was in fact executed as security for debt, and was agreed by the parties thereto to be a mortgage; that he had tendered to appellant the amount of the secured debt, with interest, but that appellant had refused to allow the redemption and claimed the land absolutely.

Appellant answered, denying all the allegations of the com-

plaint as to the deed being intended as a mortgage, and asserting that the deed was intended as an absolute conveyance according to its import. The chancellor granted the relief prayed for, declaring the deed to be a mortgage and allowing redemption therefrom. The rule is firmly established by repeated decisions of this court that in order to change, by parol testimony, the purport of a deed absolute on its face by showing that it was executed as a mortgage, the proof must be "clear, unequivocal and convincing." *Rushton* v. *McIllvene, ante* p. 299, and authorities cited.

There is a decided conflict in the direct testimony as to the agreement between the parties when the deed was executed. Welsh testifies positively and definitely that Griffin agreed to furnish the money with which to pay off the debt to Anderson and to accept the conveyance as security therefor. Griffin testifies as positively that no such agreement was made, and that the conveyance was intended to be absolute. He admits, however, that about a month after the execution of the deed he agreed to re-sell the land to Welch for the amount which he (Griffin) had paid out, with interest, and "pay for the time he had been out."

There is also a good deal of corroborative testimony on both sides. There are, however, two undisputed circumstances which weigh very heavily in favor of the contention of appellees and convince us beyond reasonable question that appellees are correct in their contention that the conveyance was executed and accepted as security for debt.

Griffin says that Welch came to his house and stated that he could not borrow the money to pay the land out, and that he (Griffin) could take it. Welch had also mortgaged the land to a Mr. Goodwin for $100, and on the day the conveyance was executed, before it was executed, the Goodwin mortgage was satisfied by a note for the debt executed by Welch and signed as security by Griffin. Welch afterwards paid this note. Now, as Welch was a very poor man, and could not raise the money to pay off the Anderson debt, why, if he had to give the land up entirely, did he undertake to pay the Goodwin debt in order to remove that incumbrance? If, as Griffin claims, the execution of the conveyance was in effect an abandonment of the land because he could not pay the debt against it, why did he not aban-

don it with the Goodwin incumbrance on it too? If that was true, it seems to us that he would not have shown so much concern about the Goodwin debt as to renew it and afterward pay it off. The land, according to the preponderance of the testimony, was worth considerably more than the Anderson debt, and Griffin was anxious to get it because it was near his lands. Therefore it seems more reasonable that, if Welch intended to abandon the land altogether, he would have done so with the Goodwin incumbrance on it.

The other undisputed controlling fact is this: In January, 1904, Welch gave Griffin a note for $100 for rent of the land; being still in possession. When he paid the amount of the note to Griffin in November, 1904, he required the latter to give him a receipt, reciting that he agreed "to let this $100 go as a part payment on the place or land if they pay for the land on or by January 1, 1905."

Welch tendered the balance of amount due on November 28, 1904, which was withn the terms stipulated in the receipt.

We think the evidence is sufficient to sustain the finding of the chancellor, and the decree is affirmed.